Good morning, your honors. My name is Isaac Levin. I'm the injured party and the appellant. I stand here today viewed and chased by the defendants as a criminal, merely for purchasing a one-down building for the purpose of renovation and revitalization. It has been 13 years since I purchased 26 seminaries and 11 years in the court system. My question to this panel are, as an ordinary person who went a straight path, why did I need to know grandfathering, vested right, collateral estoppel? Why did I need to know zoning codes at all? At the all my sins and weigh them against the 11 years of punishment I had to endure? The bank's money is gone. The investment is gone. The property is gone. The state attorneys are gone. Mentally, I'm devastated. The panel should not be mistaken. All are the result of hatred and bigotry. Hatred and bigotry. The motion to dismiss was a 12B6. On this type of a motion, the only facts to be considered are those alleged in the complaint and the court must accept them as true in deciding whether the complaint alleges enough facts to survive. District courts are obligated to construe complaints liberally, interpreting them to raise the strongest arguments that they suggest in favor of me, the poor say. Courts may not read into poor say submissions, claims inconsistent with the poor say allegations or arguments that the submission themselves would not suggest. The district court deviated from these well-established principles and legal standards. Factually, allow me to start at the beginning. The bank sends me to the highest to get a letter confirming the use of 26th seminary. David Chagwit was the head of the department. He gave me the letter. This can be found at 836. Only he had knowledge as to what the building was. He gave me the permit. This building permit is for the interior renovations only. This can be seen at 895. The district court noticed it twice in the 2015 decision. Conversion was never mentioned. Had I known that the district court eight years later would develop conversion, I would have walked away from the project eight years earlier and have $300,000 in the bank. Conversion was a manufactured fact of the district court. Contrary to the finding of Mr. Chagwit. In early 2009, two years after I paid with the bank's money and got the permit, I was told, by the way, the permits were canceled while I was working simultaneously in another house. They told me to go to the board to qualify for a new permit on the erroneous proposition that I was changing the use of the first floor and therefore required parking. When hate and bigotry are present, common sense and humanity evaporates. So the board speaker said that they missed parking years earlier and need to correct it now. This can be seen at 883 at one. I told the board that the building was grandfathered in. The building was grandfathered in because it was sitting vacant for so long. And that I should buy another building to give them parking. This can be seen at 882 at five, 883, 885 at 19. The speakers were actively lying to the board. All permits indicated residential, but speakers were waiting for me to tell them whether it would be commercial knowing that I only worked on residential. I filed a medical 78 proceeding in Courtland County Supreme Court in front of Justice Ramsey who is now a justice in the third department. 11 months later, Justice Ramsey converted the article 78 to an action. This court has jurisdiction over the claim for damages pursuant to 42 UIC section 1983. Petition of motion to amend is granted to the limited extent of permitting them to assert claim for damages and attorney fees pursuant to 42 UIC section 1983 based on selective enforcement of law and converting that claim to an action. I was told that the federal court is more equipped to deal with section 1983. Big mistake. I filed on the proposition of selective enforcement. I described in the complaint that the first law used to be commercial when I purchased the building, a vacant and abandoned space. Therefore, the district found that I was making a conversion from commercial to residential even though Mr. Chadwick, the authority in the matter, said that it was a free family in accordance with the zoning code. I did not know that a district court could manufacture facts and dismiss the actions based on the manufactured facts of the district court irrespective of factual allegations or other evidence, dispositions and exhibits. The judge failed to understand but most likely did not want to understand that real estate is not classified based on what the property was at the time of purchase. If the building has remnants of an abandoned nuclear power station, does that mean that I purchased a nuclear power station rather than how it was classified in the zoning ordinance? Was I supposed to dictate the language of the letter to Mr. Chadwick eight years earlier? The position speaks for itself. The district court had the responsibility to clarify the letter to Mr. Chadwick, defendant Seacrest and defendant Frank. At the minimum, it was a tribal issue of facts. The district court failed to do so. For years, I wondered why they misled me with a letter and permit. I started to understand the issues in 2018. I found newly discovered evidence, the 1983 Appendix A Zoning Code, in an attic of a friend. I was in shock and in a state of disbelief. The property was granted to all subsequent amendments thereof until the year 3000 of the public. It is mentioned three times as related to 26th Seminary. Change of use was as of right. Defendant lied in the prior action. Therefore, the entire decision in 33th Seminary 1, that I made a conversion lax merit, never existed. There was no conversion, no change of use, and no modification. The truth now is the rest of the card acts with the manufactured tax. The district court now recognized it and said, even if the expense restored itself to residential use, I was required to comply with the new law, which requires parking upon conversion. The district court did not point to any citation suggesting why a grandfathered building had to be removed. I respectfully submit to this panel that the district court erred as a matter of law when it granted the motion to dismiss. I respectfully request that this panel reverse the order of dismissal and amend to the district court for further proceedings with clear instructions that 26th Seminary was grandfathered at all relevant times. Thank you. Thank you. Thank you, Mr. Levin. We'll hear from Mr. Frank and the city of Binghamton. Thank you, Your Honor. May it please the court, I'm Janet Callahan from Hancock S. Brooke. I represent the defendants. The issues raised by the plaintiff in this lawsuit were fully litigated in his prior lawsuit, and nothing that he's raised here compels a different outcome. In the prior lawsuits, the plaintiff claimed his constitutional rights were violated by the denial of his building permit application seeking to convert 26th Seminary into a three-unit dwelling that would have nine bedrooms and no off-street parking. He claimed in that lawsuit that the property was grandfathered by the July 2007 from David Chadwick, who was the city supervisor of construction. That letter, however, simply stated that the property, quote, is in an R3 zoning district, and the use as a three-family is a legal non-conforming use, close quote. The district court properly held that it did not establish that 26th Seminary was entitled to convert the property from its prior legal non-conforming use to a different non-conforming use without seeking the requisite approval. The district court's dismissal of the prior lawsuit was affirmed by this court. Plaintiffs made a petition for writ of certiorari to the United States Supreme Court. That was denied. So the issue of whether his property was grandfathered was fully litigated and was resolved against him. The plaintiff now attempts to raise the issue again. The district court properly rejected his attempt dismissing his amended complaint as barred by race judicata. This time, the plaintiff's argument that his property was grandfathered was based on this 1983 Appendix A that he says he found in an attic in 2018. He has characterized Appendix A as newly discovered evidence that bars the application of race judicata, and he also charged the defendants with committing fraud on the court by failing to call it his attention. The district court held that first, Exhibit A wasn't evidence, but rather a statute. Second, that it wasn't newly discovered because it was a matter of public record. And third, no fraud had been committed on the court because the existence of Appendix A was not concealed by the defendants, and they were not under any duty to call it to the plaintiff's attention. The plaintiff also sought a declaratory judgment supporting his interpretation of Appendix A as validating his new theory on the same claim he had raised in his prior lawsuit, that he didn't have to comply with the 2009 zoning ordinance. Essentially, his new argument was that while the first floor of the property had previously been used as commercial space, which was a legal nonconforming use, it had been abandoned. And once that happened, the space somehow reverted or was restored to residential and was therefore in conformity with the current zoning regulations. There are a number of problems with this theory which were addressed and resolved against the plaintiff by the district court. First and most importantly, the plaintiff was not seeking to continue a nonconforming use. His argument was that he acquired a vested right in a second nonconforming use that shifted over from an earlier different nonconforming use. He argued that once the commercial use of the first floor was abandoned, the space automatically converted to a third residential unit, and he acquired a vested right in that unit. That's not the law, as the district court found, citing Norton v. Town of Iflip. Second, the plaintiff's theory that the first floor was restored or reverted to is belied by the plain language of Appendix A. Paragraph 1207 of that appendix reads that if any nonconforming use of a building ceases for any reason for 12 months, which is what happened here, such nonconforming use shall not thereafter be reestablished. Any future use of such building structure or land shall be in conformity with the standards specified by this ordinance for district in which the building structure or land is located. Only two-unit dwellings are allowed in an R3 district as a right, and that's at page 462 of the appendix. A three-unit residence is nonconforming and it requires approval, and that's at page 463. There's another paragraph of the or activity of any building structure or land may be changed to a use only permitted in the district R3 or by a use variance granted by the Board of Appeals to another nonconforming use. So even assuming the plaintiff could convert one nonconforming use commercial to another three-unit residence, he would still need approval as the district court properly held nothing in appendix A conferred a vested right that would allow a switch from one nonconforming use to a different nonconforming use without approval. There's also nothing in the record to indicate that the first floor was ever even used for residential purposes so that it could revert or be restored to such purpose as the plaintiff has contended. So appendix A, even if it has been found earlier and raised in the prior lawsuit, would not have changed the outcome as the district court properly found. And finally, as the district court also found, the plaintiff's position regarding the use of the first floor is inconsistent with factual assertions that were made in the prior lawsuit. The plaintiff filed two separate permit applications in which he specifically stated that the purpose of the work was to convert or change the first floor of the property from commercial to an apartment and those applications appear at pages 133 and 138 of the supplemental appendix. Those statements are contradictory to his present assertion that he was not seeking to modify or convert or change the property in any way and that it was already in conformity with the zoning ordinance. Unless there are questions for these reasons, the defendants request that this court affirm the district court's order dismissing the amended complaint. Thank you. Thank you, counsel. Mr. Levin has not reserved any time for rebuttal, so that will conclude argument on this case. We will reserve decision and that is the last case on our calendar, so I will ask the clerk to adjourn court. Court is adjourned.